**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **DENNIS MELTON,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL NO. 3:09CV562 |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) ) | |
| Defendant. | ) ) ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Dennis Melton, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on January 23, 2006, claiming disability due to multiple injuries sustained in a car accident, heart surgery, a brain injury, and overwhelming pain, with an alleged onset date of February 6, 2004 (R. at 69, 75, 85, 89.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 49-51; 56-61.) On January 29, 2007, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 19-44.) On September 21, 2007, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 8-18.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

3

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

4

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of a cognitive disorder and personality changes as residuals of a 1998 head injury, a shortened left leg and degenerative changes of the left hip and sacroiliac joint as residuals of a left hip fracture and related surgery, and degenerative disc disease at the L5-S1 level of the lumbosacral spine, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-12.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that due to his shortened left lower extremity with balance problems, he could not work around heights and hazardous machinery, could not perform any overhead reaching, and could not crawl, kneel, squat, or stoop; and that due to his psychiatric impairments and subjective complaints of pain, he was capable of understanding, carrying out, and remembering only simple instructions. (R. at 12-16.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a machine operator because of the level of exertion required. (R. at 16.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 16-17.)

Specifically, the ALJ found that Plaintiff could work at the sedentary level as a small parts assembler, an inspector, or a hand packer. (R. at 17.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 18.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ improperly rejected the opinion of Dr. Dougherty on Plaintiff's mental RFC; and (2) the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-4.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 7-13.)

### A. The ALJ properly weighed Dr. Dougherty's opinion on Plaintiff's mental RFC.

Plaintiff argues that the ALJ rejected consultative examiner Dr. Dougherty's medical opinions without any countervailing medical authority. (Pl.'s Mem. at 4.) Plaintiff further asserts that Dr. Dougherty's opinion was well-supported and that the ALJ should not have ordered a consultative exam and subsequently disregarded the examiner's findings. (Pl.'s Mem. at 4.) Defendant argues that Plaintiff is essentially asking the Court to re-weigh the evidence and reach a different conclusion regarding Dr. Dougherty's opinion. (Def.'s Mem. at 8-9.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would

7

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

The ALJ ordered a consultative psychological examination for Plaintiff which was conducted after the hearing. (R. at 189-201.) Dr. Linda M. Dougherty performed a three hour psychological examination on Plaintiff, during which he was alert but irritable, complaining throughout the evaluation. (R. at 15, 189-92.) Plaintiff acknowledged that he was independent in his activities of daily living, and that he "took care" of his family in exchange for them supporting him. (R. at 14, 190.) Dr. Dougherty found that Plaintiff had low average intellectual functioning and low average memory capabilities, but that his attention processes and ability to mentally manipulate information were average. (R. at 14, 192-97.) Dr. Dougherty also reported that Plaintiff was not credible, as he complained of chronic fatigue but was able to fully participate in the three hour evaluation. (R. at 14, 197.) Dr. Dougherty diagnosed a personality change to a head injury and a cognitive disorder. (R. at 14-15, 197.) Dr. Dougherty rated Plaintiff's global assessment of functioning (GAF) at 45, yet she concluded that Plaintiff could perform simple, repetitive tasks and moderately detailed and complex tasks, maintain regular

8

attendance, and complete a normal workday. (R. at 15, 197-99.) Nevertheless, Dr. Dougherty also concluded that Plaintiff would have marked limitations on his ability to interact with the public, co-workers, and supervisors, marked limitations on his ability to make judgments on complex work-related decisions, and marked difficulties responding appropriately to changes in a routine work setting. (R. at 15, 199-200.) Further, Dr. Dougherty opined that Plaintiff's propensity to argue and complain would result in him not being accepted by either his employer or his co-workers. (R. at 15, 198.)

The ALJ found that Dr. Dougherty's opinion was entitled to only limited weight. (R. at 15.) The ALJ noted that she based her conclusions on a single examination with Plaintiff, during which he was irritable and complained a great deal. (R. at 15.) The ALJ also noted that though Plaintiff alleged chronic fatigue, he did not report any fatigue during Dr. Dougherty's three hour evaluation, which consequently caused Dr. Dougherty to question Plaintiff's credibility. (R. at 15.) The ALJ also noted that though Dr. Dougherty suggested that Plaintiff's personality changes were related to his head injury in 1998, and were a factor in his limitations, Plaintiff had returned to full-time employment after that injury up until the alleged onset date of his disability in 2004. (R. at 15.) Further, the ALJ noted that Plaintiff's lack pf psychiatric treatment, the results of psychological testing, and Plaintiff's ability to remain alert and attentive during a three hour psychological evaluation diminished Plaintiff's credibility regarding his assertions of the frequency and severity of his issues. (R. at 15.) Plaintiff's admitted activities of daily living also contributed to the ALJ's finding that he was not entirely credible. (R. at 15.)

The ALJ also noted that state agency medical consultants concluded that Plaintiff did not have a medically determinable mental impairment. (R. at 16, 171, 183.) The ALJ gave those

9

assessments limited weight because the consultants did not observe Plaintiff or have the opportunity to consider additional medical evidence submitted after their review of the record. (R. at 16.)

It is noteworthy that the ALJ did not entirely discredit the opinion of Dr. Dougherty and Plaintiff's allegations of a mental impairment. Instead, the ALJ adopted Dr. Dougherty's opinion that Plaintiff was only capable of understanding, remembering, and carrying out simple instructions. (R. at 16, 198-99.) The ALJ also noted that the record did not reflect an inability to perform those tasks on a regular and continuing basis, which is consistent with Dr. Dougherty's opinion that Plaintiff could maintain regular attendance and complete a normal workday. (R. at 16, 198.) However, contrary to Dr. Dougherty's report on Plaintiff's ability to interact with others, the record reflects that Plaintiff interacted with family members, liked to play cards with friends (but did not interact with them anymore), liked to fish, and was able to go out daily, drive, and shop. (R. at 15, 23, 29-30, 37-38.) Also, Plaintiff successfully returned to work as a machine operator for almost six years after sustaining his head injury that apparently was the cause of his personality changes. (R. at 15, 82-83.) Further, Plaintiff testified that he did not have any memory problems, but that he could not tolerate people that "act like tyrants or people that just aren't likeable." (R. at 13, 31-32.)

The ALJ has offered substantial evidence to support his conclusion that Plaintiff's mental impairment did not preclude him from performing a limited range of light work. The ALJ is not required to simply adopt the opinion of a consultative examiner outright, as Plaintiff seems to argue. (Pl.'s Mem. at 4.) Instead, the ALJ must weigh the evidence and assign the opinion some level of weight based on the record as a whole. Because the ALJ properly evaluated Dr.

10

Dougherty's opinion along with the other evidence of record, and his conclusion was supported by substantial evidence, it is the Court's recommendation that the ALJ's decision be affirmed.

> **B.** **The ALJ posed a proper hypothetical to the VE that encompassed all of Plaintiff's mental limitations established by the record.**

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.

In support of his argument that the ALJ failed to formulate a mental RFC assessment, Plaintiff cites C.F.R. § 404.1520a(d)(3), which states, "[i]f we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." (Pl.'s Mem. at 4.) Plaintiff argues that the ALJ did not conform with this regulation; however, the ALJ's analysis of Plaintiff's RFC extended over four pages of his opinion, and also contained a detailed assessment of Plaintiff's mental abilities, as discussed earlier. (R. at 12-16.) Furthermore, the ALJ limited Plaintiff to "unskilled" work, which, contrary to Plaintiff's assertion, includes mental limitations. (R. at 12-16.) As Defendant argues, unskilled work is defined as:

work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength...and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

20 C.F.R. §§ 404.1568(a), 416.968(a). Unskilled work is further defined in the Social Security Regulations:

The basic mental demands of competitive remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situation; and to deal with changes in a routine work setting.

SSR 85-15. Therefore, by definition, Plaintiff's mental limitations as found by the ALJ are included in the category of "unskilled" work.

Plaintiff essentially argues that the ALJ did not properly analyze Plaintiff's mental impairments. (Pl.'s Mem. at 3-4.) However, as noted earlier, the ALJ thoroughly discussed Plaintiff's alleged mental impairment, with an analysis of treatment records, testimony, reported daily activities, and opinions of several examiners. (R. at 12-16.) Because the ALJ formed a well-supported mental RFC assessment, and because the hypothetical posed to the VE included such mental RFC in the limitation to unskilled work, the Court recommends a finding that the ALJ's decision be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert

E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: April 13, 2010
Richmond, Virginia